**\*E-FILED 5/17/05\***

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIAN P. VICK,<br><br>       Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | NO. C 03-05707 RS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

Plaintiff Marian Vick ("Vick") moves for entry of judgment in her favor and against defendant Jo Anne Barnhart, the Commissioner of Social Security ("Commissioner").  Vick requests that the Court reverse the Commissioner's denial of her application for social security benefits because, she contends, she is disabled and, therefore, unable to engage in any substantial gainful activity.  The Commissioner opposes Vick's motion and cross-moves for entry of judgment in her favor.  The motions were fully briefed and submitted on the papers pursuant to Civil L.R. 16-5.  Based on all the papers filed to date, as well as on the administrative record, Vick's motion for summary judgment is denied, and the Commissioner's cross-motion is granted, for the reasons set for below.

1                                          II.  BACKGROUND

2          Vick suffers from a back disorder and right upper extremity radiculopathy.  Born on March 7,

3   1942, Vick is currently 63 years old, has a high school education, and has relevant vocational

4   background as a leasing agent and apartment manager.  See Administrative Transcript ("AT") at p. 11.

5   On June 17, 2002, Vick applied for disability insurance benefits, alleging an inability to work since

6   November 1, 2001 due to back pain. Id. She has not engaged in substantial gainful activity since her

7   alleged onset date of disability.  Id. Her application was denied by the Social Security Administration

8   ("SSA") initially and upon reconsideration.  Vick subsequently filed a timely request for hearing before

9   an Administrative Law Judge ("ALJ"). On February 19, 2003, a hearing was held at which  Joseph

10  Jensen, M.D., ("Dr. Jensen") testified as the Commissioner's medical expert, along with the

11  Commissioner's vocational expert Darlene McQuary ("VE"). Vick was also present and testified at the

12  hearing. Edward M. Katz, M.D. ("Dr. Katz"), Vick's treating physician, did not attend the hearing,

13  although his assessment of Vick's disability was submitted into evidence.

14         Dr. Katz's assessment stated that Vick had chronic cervical strain with radiculopathy, right C7;

15  C5-6 central disc bulge; and C6-7 disc bulge and cervical spondylosis. Id. at p.12.  Based on this

16  assessment, Dr. Katz opined that Vick could perform less than a full range of sedentary work, and

17  hence suffers from a back disorder which meets or equals the requirements for a disability under 20

18  C.F.R. §404, Subpt. P, App. 1 (2002). 1.04 ("Listing 1.04"). Id.

19         In contrast, Dr. Jensen stated that Vick suffers from a back disorder which does not meet or

20  equal the requirements for a disability under Listing 1.04.  "[W]hile there is evidence of cervical

21  spondylosis with some encroachment of the neural foramen and some right upper extremity

22  radiculopathy, Dr. Katz's assessments were not supported by the objective medical findings." Id. In

23  addition, two state agency doctors who had previously reviewed the medical evidence, also concluded

24  that Vick's alleged disability did not meet the requirements of Listing 1.04. Id. at 108-115. In a

25  Physical Residual Capacity Form, dated August 5, 2002,

26  Nayvin Gordon, M.D. ("Dr. Gordon") and Anthony Jackson, M.D. ("Dr. Jackson")

27

28

                                                    2

reviewed the medical evidence and concluded that Vick "had the ability to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and occasionally reach overhead." Id. at 12.

The VE testified that Vick's past work as a leasing agent and apartment manager constituted light, skilled jobs. Id. at p. 14.  In answer to a hypothetical question asked by the ALJ to the VE, as required by 20 C.F.R. §404.1520(a)(4)(v), in the context of an individual of Vick's age, education, vocational background, and stated medical limitations, the VE stated that "the hypothetical individual could perform the claimant's past work as a leasing agent and apartment manager." Id.

The ALJ determined the following relevant findings.  First, Vick has not engaged in substantial gainful activity since she filed her application. Id. at 14.  Second, the medical evidence establishes that Vick suffers from various impairments which are "severe," but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Listing 1.04. Id. Third, Vick's allegations of disabling pain are not credible for the reasons given in the rationale portion of the ALJ's decision. Id. Fourth, Vick has the ability to lift (with both arms) up to 10 pounds frequently and 20 pounds occasionally; push/pull up to 10 pounds frequently and 20 pounds occasionally; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally reach overhead; and, frequently perform fine fingering, gripping and grasping and occasional torquing. In addition, she could only occasionally turn her neck up/down or side to side and is restricted from using vibrating tools. Id. at pp. 14-15. Fifth, Vick has relevant work experience as a leasing agent and apartment manager (light, skilled jobs); as a general clerk (light, semi-skilled job); and, as a delivery driver (light, unskilled job). Id. at p. 15. Sixth, Vick is able to perform her past work as a leasing agent and apartment manager. Id. Seventh, that Vick was not under a "disability," as defined in the Social Security Act (20 C.F.R. 416.920(f) and 404.1520(f)). Id.

### III.  LEGAL STANDARDS

To be eligible for Social Security disability benefits, the claimant must be disabled.  "A claimant bears the burden of proving that an impairment is disabling." Miller v. Heckler, 770 F.2d 845, 849 (9th

1   Cir. 1985). Disability is defined as "an inability to engage in any substantial gainful activity by reason of

2   any medically determinable physical or mental impairment which can be expected to result in death or

3   which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

4   U.S.C. § 423(d)(1)(A). An "impairment" for purposes of this definition "results from anatomical,

5   physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical

6   and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In addition, a person is disabled only if

7   the impairment is so severe as to preclude not only performance of her previous work, but also,

8   considering her age, education and work experience, performance of "any other kind of substantial

9   gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

10      The Court's review of the ALJ's decision is limited. The determination denying benefits will be

11   upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g), and if the ALJ

12   applied the proper legal standards. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); Kail v.

13   Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir.

14   1983). When the proper legal standards are not applied by the ALJ in weighing the evidence and

15   reaching a decision, it must be set aside, even if the findings are supported by substantial evidence.

16   Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978); Lebus v. Harris, 526 F. Supp. 56, 59 (N. D.

17   Cal. 1981).

18      Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

19   to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993); Walker v.

20   Matthews, 546 F.2d 814, 818 (9th Cir. 1976). The reviewing court must "look to the record as a

21   whole and not merely at the evidence lending support to a finding." Cox v. Califano, 587 F.2d 988,

22   990 (9th Cir. 1978), quoting Walker v. Matthews, 546 F.2d at 818; see also Desrosiers v. Sec. of

23   Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). The court cannot substitute its own

24   conclusion for that of the ALJ if there is sufficient evidence to support the ALJ's outcome. Young v.

25   Sullivan, 911 F.2d 180, 184 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

26      When a claimant gives testimony regarding subjective pain, the ALJ must analyze several

27   possible bases for discounting or affirming subjective allegations of pain made by the claimant. 20

28

4

1   C.F.R. §§ 404.1529 and 416.929.  The ALJ must consider "the extent to which [the claimant's]

2   symptoms can reasonably be accepted as consistent with the objective medical evidence and other

3   evidence."  20 C.F.R. § 404.1529(a).  "Objective medical evidence" is defined in this section as

4   medical signs and laboratory findings.  "Other evidence" includes statements from the claimant,

5   statements or records of the treating physician or psychologist and others about the claimant's medical

6   situation, diagnosis, daily activities, efforts the claimant has made to work, and other evidence about

7   how the claimant's impairment affects his or her ability to work. The claimant must show that the

8   objective medical evidence and other evidence demonstrate that he or she has a medical impairment(s)

9   "which could reasonably be expected to produce the pain or other symptoms alleged and which, when

10  considered with all of the other evidence ... would lead to a conclusion that [the claimant] is disabled."

11  20 C.F.R. § 404.1529(a).

12      In determining whether an applicant is eligible for benefits, the Social Security Administration

13  ("SSA") follows a five-step process. 20 C.F.R. § 404.1520.  At step one, the SSA determines whether

14  the applicant is currently engaged in gainful employment. If he is, he is not disabled. 20 C.F.R. §

15  404.1520(b).  At step two, the SSA determines whether the applicant has a severe impairment; the

16  applicant must demonstrate that he has "anatomical, physiological, or psychological abnormalities which

17  can be shown by medically acceptable clinical and laboratory diagnostic techniques," and that the

18  impairment significantly interferes with his or her work activities. 20 C.F.R. § 416.908; 20 C.F.R. §

19  404.1520(c).  At step three, if the applicant is suffering from such an impairment, the SSA then

20  determines whether the impairment is included on a standardized list, or is equivalent to or more serious

21  than an ailment on the list. 20 C.F.R. 404.1520(d).  At step four, if the applicant meets the burden of

22  showing such an impairment, he is considered disabled.  At step five, if the applicant is unable to

23  demonstrate that his impairment is equivalent to or more severe than a listed impairment, the SSA will

24  consider the applicant's ability to do his former job or other work based on his education, age, and

25  experience. 20 C.F.R. 404.1520(e) - (f).

26                                              IV.  DISCUSSION

27      Vick argues that the ALJ did not afford appropriate weight to the medical evidence (e.g., the

28  opinion of Dr. Katz), improperly discounted Vick's credibility, and failed to include the functional

                                                        5

1  limitations set forth by Dr. Katz in the hypothetical functional question posed to the VE, as required by

2  20 C.F.R. §404.1520(a)(4)(v).

3      A. <u>The Proper Weight of Medical Evidence</u>

4      Vick contends that the ALJ disproportionately weighed the medical opinion of Dr. Jensen over

5  that of Dr. Katz, and that this disproportionate weighing was a substantial factor in the denial of social

6  security benefits.  In contrast to the medical opinion of Dr. Katz, who opined that Vick was not capable

7  of performing sedentary or light work on a regular and continuing basis, <u>see</u> AT at pp. 120-127, Dr.

8  Jensen testified that Dr. Katz's assessments were not supported by the objective medical findings, and

9  furthermore, that Vick could perform such work on that basis. <u>Id</u>. at p. 12. Specifically,  Dr. Jensen

10  testified that although there was some evidence of right upper extremity radiculopathy, the impairment

11  did not meet or equal the criteria contained in Listing 1.04. <u>Id</u>. Vick argues, however, that there is

12  ample evidence in the record to support her contention that a disability does, in fact, exist per Listing

13  1.04. For example, she contends, the ALJ did not properly consider Dr. Katz's examination which

14  showed "tightness and tenderness in the neck," <u>Id</u>., and a set of Magnetic Resonance Imaging (MRI)

15  studies which showed, among other findings, in the opinion of Dr. Katz, " bilateral foraminal narrowing

16  at C5-6 and left sided foraminal narrowing at C6-7 secondary to bony osteophytes." <u>Id</u>. at pp. 12-13.

17      The Commissioner argues that the ALJ properly weighed the medical evidence in adopting Dr.

18  Jensen's assessment of Vick's limitations, based on the specific and legitimate reasons that: (1) the

19  testimony of Dr. Jensen is also supported by the medical opinions of Dr. Gordon and Dr. Jackson, and

20  (2) the lack of objective findings and laboratory tests (i.e., x-rays, MRI scans, etc.) to support Dr.

21  Katz's assessment. <u>Id</u>. at pp. 13-14.

22      While generally a treating physician, by virtue of proximity to a patient, may be in a better

23  position to determine the scope of a disability than would a non-treating physician, the record here

24  reflects that the ALJ gave specific legitimate reasons supported by substantial evidence to accept Dr.

25  Jensen's conclusion as opposed to that of Dr. Katz. <u>Id</u>. at 12-15. "When a nontreating physician's

26  opinion contradicts that of the treating physician-but is not based on independent clinical findings, or

27  rests on clinical findings also considered by the treating physician-the opinion of the treating physician

28

6

1   may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on

2   substantial evidence in the record.'" Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999),

3   citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995). "Opinions of a nonexamining, testifying

4   medical advisor may serve as substantial evidence when they are supported by other evidence in the

5   record and are consistent with it." Id. at 600. "[W]hen evidence is susceptible to more than one rational

6   interpretation, the ALJ's conclusion must be upheld." Id. at 601. First, Dr. Jensen's assessment, which

7   was based on the review of the medical evidence present to the ALJ, is consistent with the assessments

8   by the state agency doctors, Dr. Gordon and Dr. Jackson. See AT at p. 12. Second, the Medical

9   Source Statement prepared by Dr. Katz for the ALJ lacks sufficient explanatory remarks substantially

10  to justify its conclusions, and thus to refute Dr. Jensen's testimony that Vick could perform sedentary or

11  light work on a regular and continuing basis. Id. 14. Therefore, since the record reflects that there is

12  sufficient evidence to support Dr. Jensen's testimony, the medical evidence was not improperly weighed

13  by the ALJ.

14          B. Vick's Credibility

15          Vick argues that the ALJ committed an error of law by failing to find her credible, without first

16  providing clear and convincing reasons supported by substantial evidence in the record as a whole.

17  Specifically, Vick alleges that the ALJ failed carefully to consider her statements about her symptoms,

18  as required by Social Security Ruling 96-7p. The Commissioner argues that Vick's contentions are not

19  credible for at least three reasons. First, the ALJ noted that despite Vick's claim of disability since

20  November 1, 2001, the earliest record of treatment was a June 26, 2002 report by Dr. Katz. Id. at p.

21  12. Second, the ALJ stated that there are no treatment records from July of 2002 until January of

22  2003. Id. Third, although the ALJ has found that the claimant suffers from various impairments which

23  are "severe," these impairments are not listed in, or medically equal to, an impairment listed in Listing

24  1.04. Id. at p. 14.

25          "The ALJ may consider at least the following factors when weighing the claimant's credibility:

26  '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her]

27  testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from

28

1   physicians and third parties concerning the nature, severity, and effect of the symptoms of which

2   [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958

3   (9th Cir. 2002), citing Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th,1997).

4          Applying those credibility factors, the ALJ permissibly concluded that Vick's testimony did not

5   comport with the lack of evidence of severe limitations precluding the performance of a wide range of

6   light work.  See AT at p. 13.  Further, the ALJ found that "[t]he objective medical findings contained in

7   [Dr. Katz's] sparse treatment notes and the March 28, 2003 cervical spine MRI scan are consistent

8   with the limitations found [by Dr. Jensen]." Id. at p. 14. No error of law, therefore, arises from the

9   ALJ's findings regarding Vick's credibility.

10          C. Hypothetical Functional Question

11          Vick contends that the ALJ committed a legal error by failing to include Dr. Katz's stated

12   restrictions in the hypothetical question posed to the VE. Specifically, Vick alleges that the ALJ

13   premised a single hypothetical question to the VE based solely on the opinion of Dr. Jensen and not on

14   that of Dr. Katz, and that this premise was improperly outcome-determinative with respect to the

15   analysis performed at step five. The hypothetical question assumed an individual of Vick's age,

16   education, vocational background, and stated medical limitations, as testified to by Dr. Jensen, to which

17   the VE responded that "the hypothetical individual could perform the claimant's past work as a leasing

18   agent and apartment manager." Id. at p. 14. The Commissioner contends that Dr. Jensen's testimony

19   constituted the requisite substantial evidence on which the ALJ may rely.

20          The "ALJ must propose a hypothetical that is based on medical assumptions supported by

21   substantial evidence in the record that reflects each of the claimant's limitations." Osenbrock v. Apfel,

22   240 F.3d 1157, 1163 (9th Cir. 2001), citing Roberts v. Shalala, 66 F.3d 179, 184

23   (9th Cir.1995). As noted above, the Commissioner properly concluded that Dr. Jensen's testimony

24   constitutes substantial and specific medical evidence, and thus the hypothetical premised on Dr.

25   Jensen's testimony fully and accurately reflected Vick's impairments and degree of functional limitations.

26   As a result, the ALJ need not have based the hypothetical question on Dr. Katz's restrictions, since the

27   ALJ properly rejected those restrictions based on substantial evidence contained in the record.

28

1                                                     V. CONCLUSION

2         For the reasons stated above, the Court grants the Commissioner's motion for summary

3 judgement and denies Vick's motion for summary judgment. A separate judgment will be entered by the

4 Court.

5 IT IS SO ORDERED.

6 Dated: May 17, 2005

7

8                                         /s/ Richard Seeborg
                                        RICHARD SEEBORG
                                        United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER WAS ELECTRONICALLY PROVIDED TO:**

2

3 | **Counsel for Plaintiff(s)**

4 | Harvey P. Sackett, Esq.
Email: hps@hpspc.com

5

6 | **Counsel for Defendant(s)**

7 | Sara Winslow, Esq.
Email: sara.winslow2@doj.gov

8

9 | Dated: May 17, 2005

10

11 |        /s/ BAK _____
       Chambers of Magistrate Judge Richard Seeborg

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

_____RICHARD SEEBORG
United States Magistrate Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11